Scofield, J.,
delivered the opinion of the court:
From July 1, 1885, to November 3,1886, the claimant was United States commissioner for the northern district of New York. At this time it was his practice, in cases where parties had been arrested by the marshal on proper warrants and brought before him for examination, in order to hold the parties in the custody of the officers during, short suspensions or adjournments of the examination, to issue additional temporary warrants.
The new warrants were directed' to the marshal and his deputies and to the keeper of the jail, commanding them “to receive into custody and safely keep for further examination and hearing before him v the parties therein named. In various cases he issued ninety-one such warrants. For each warrant, with the filing and entering the return, he charged $1.25, making for the ninety-one warrants $113.75. What occasioned delay in the examinations and how long it was continued does not appear.
The defendants resist the payment of these charges on the ground that the temporary warrants were entirely unnecessary. In their opinion, the origiual warrants authorized and required *222 the marshal not only to arrest the alleged offenders and bring them before the commissioner, but also to keep them safely during the examination, including necessary interruptions and adjournments.
The claimant, on the contrary, holds that the marshal’s duty, under the warrants of arrest, was discharged and his power over the prisoners exhausted when he brought them before the commissioner “ and delivered them into the custody of the court.”
In this respect we can not agree with the claimant. It is no part of the commissioner’s duty to take manual control of prisoners. When brought before him on warrants of arrest they are still in the custody of the marshal. It is his duty, unless otherwise ordered by the commissioner, to hold them in custody until upon examination they are finally bailed, committed, or discharged. The warrant of arrest, with the averment that the examination, without unnecessary delay, was still in progress, would constitute a sufficient answer to a writ of habeas corpus. It is as much the duty of the marshal to hold prisoners to await the examination and decision of the commissioner as it was to arrest them at first.
Bishop on Criminal Procedure states the officer’s powers and duties under a warrant of arrest as follows :
“ Seo. 217. The prisoner while before the magistrate is, in law, still in the custody of the officer until he has been either discharged, bailed, or committed to prison. The officer may keep his warrant for his own justification, and need only return to the justice what he has done in pursuance of his commands.”
Many authorities on this subject are there cited.
Section 32 of the same author says:
“ While he [the prisoner] is in custody, and not before the magistrate or court, the officer is not obliged to keep a manual possession of him, but may put him in the proper place of confinement either with or without a mittimus as the case may require.”
In United States v. Harden (10 Fed. Rep., 802), cited by the claimant, the judge says:
“When the marshal or his deputies have arrested a person, and there is some urgent necessity for committing him to jail, they ought to furnish a copy of the warrant to the jailer and a written statement of the causes which induced the necessity for such commitment.”
*223 We are not advised of any United States statute that, in direct terms, changes this practice of the common law. On the contrary, the practice seems to be approved by section 1030 of the Revised Statutes. That section is as follows:
“ No writ is necessary to bring into court any prisoner or person in custody, or for remanding him from the court into custody ; but the same shall be done on the order of the court or district attorney, for which no fees shall be charged by the clerk or marshal.”
This section appears to have been enacted to correct an alleged abuse in charging fees for temporary warrants. It declares that such warrants are unnecessary, and thus indorses the practice at common law. It also forbids the clerk or marshal to charge fees for such service?.
Whether proceedings before commissioners are included in the letter of this section or not, they certainly come within its reason and purpose. If a warrant is not necessary to authorize a marshal to transfer a prisoner to and from a court of record ou temporary adjournments, why is it necessary before a commissioner, when the alleged offender is already in the marshal’s custody and held by him for this very purpose ?
It may be observed, without giving it special importance, that the district attorney, who is authorized by section 1030 to give oral orders to the marshal, is often present at these examinations. He is required by section 771 “ to prosecute all delinquents in his district,” and is allowed $5 a day and 10 cents a mile travel for attendance upon them.
It may be noted also, with the same qualification, that the •commissioner is allowed by section 847 for issuing warrants only “ the same compensation as is allowed to clerks for like services,” while for this particular service the clerk is forbidden to charge any fee, because no such warrant in his case is necessary.
The rule of practice as advocated by the claimant must extend to and include all adjournments, however short. Brief adjournments, to await the arrival of an attorney or witness, or for food or sleep, require, on each occasion, a new warrant. Otherwise the prisoner, the marshal having no power to detain Mm, would be at liberty to depart.
It is claimed, however, that section 1014 of the Revised Statutes requires the proceedings to conform to the laws of the *224 States where the arrest is made; and that the statute of New York provides that on all adjournments the magistrate must, in default of bail, commit the defendant. These statutes are as follows:
“Sec. 1014. For any crime or offense against the United States, the offender may, by any justice or judge of the United States, or by any commissioner of a circuit court to take bail, or by any chancellor, judge of a supreme or superior court, chief or iirst judge of common pleas, mayor of a city, justice of the peace, or other magistrate of any State where he may be found, and agreeably to the usual mode of process against offenders in such States, and at the expense of the United States, be arrested and imprisoned or bailed, as the case may be, for trial before such court of the United States as by law has cognizance of the offense.”
Section 192 of the code of criminal procedure of the State of New York provides:
“ If an adjournment be had for any cause, the magistrate must commit the defendant for examination, or discharge him from custody upon his giving bail to appear during the examination, or upon the deposit of money, as provided in this code, to make sure of his appearance at the time to wrhich the examination is adjourned.”
Section 1014, it will be observed, refers to examinations before State as well as United States officers. Whether it is mandatory to Federal officers conducting such examinations may well be doubted. But upon that question it is not now necessary to express an opinion, because the warrants in question do not follow the requirements of the New York law. That law requires the magistrate on all adjournments, in default of bail, to commit the defendant. In the construction of statutes the word commit, in the absence of other qualifying words or connections, has a technical signification.
“ Commitment,” according to Abbott’s Law Dictionary, means “ the sending of a person charged with an offense to prison.” According to Bouvier, it is “ the warrant or order by a court or magistrate, directed to a ministerial officer, to take a person to prison.” This requires a mittimus.
The authority before referred to as having been cited by the claimant (10 Fed. Rep., 807) to support his view of the law says:
“The mittimus must be directed to the marshal, commanding him to con vey the prisoner into the custody of the jailer, and it *225 mnst also direct and command the jailer to receive the prisoner and keep him in close custody until discharged or taken from his custody by some proper process of law.”
The claimant’s warrants did not direct the ministerial officers to commit the parties to prison, but only u to receive them into their custody and safely keep them for further examination.” That, as we have already shown, was the marshal’s duty under the original warrants. The fact that the jailer was joined with him does not alter the case. The marshal was not required to pass the prisoners over to the jailer to be kept in close custody, but was allowed to keep them himself in any way he saw fit.
It may also be observed that the warrants fix no time when the examination was to be resumed, and we may well infer that upon this point oral orders were given and obeyed.
In the opinion of the court these temporary warrants were entirely unnecessary. Until the examinations were completed, and the prisoners discharged, bound over, or committed, it was the duty of the marshal, without additional process, to safely keep them in his custody.
For this purpose the law gave him abundant power. Section 787 of the Eevised Statutes provides that he “ shall have power to command all necessary assistance in the execution of his duty,” and section 788 “ that the marshal and his deputies shall have the same powers in executingthe lawsof theUnited Stales as the sheriffs and their deputies in such State may have by law in executing the laws thereof.”
In Turners Case (19 C. Cls. R., 629), which involved the right of the marshal to charge fees for executing similar temporary warrants, the court said:
“ In the present case the marshal had the prisoners before the commissioner upon warrants of arrest, on the authority of which it was his duty to hold them until bailed, discharged, or bound over to a higher court. If the hearing was adjourned from one part of the day to another part, or to the next or any succeeding day, the commissioner had but to remand the prisoners, with directions to the marshal when to reproduce them in court.”
It was admitted in that case, as it is now admitted, that, for special reasons, it may sometimes become the duty of the commissioner, instead of leaving the prisoners in the discretionary custody of the marshal under his original warrant during ad- *226 jonrnments, to commit them to close custody. In such a case a mittimus is the proper warrant.
The other item in the account of the claimant to which objection is made is a charge for making informal reports to the district attorney.
These reports were made in response to a circular letter addressed by the district attorney to the several commissioners, reguesting them to make prompt returns to him of the testimony given in examinations before them, stating also what disposition was made of the cases.
The information sought would doubtless be of great advantage to the district attorney in preparing his cases for court. It would enable him to facilitate public business and avoid expensive and vexatious delays. But we find no law which requires the commissioners, at the request of the district attorney, to render this service, or provides compensation for it when voluntarily performed.
The claimant’s petition will be dismissed.